## Davis, Exec., v. Brown

*White & Staples*, for plaintiff.
*Francis J. Eustace, Jr.*, for defendant.

CRUMLISH, J., October 30, 1942.—This matter comes before us on plaintiff's petition and rule to show cause why defendant's real property should not be sold at

sheriff's sale on November 2, 1942, pursuant to the foreclosure of a mortgage. Defendant is, and since October 14, 1942, has been, in the military service of the United States. Therefore, plaintiff seeks this court order to establish the validity of the contemplated sale under the relevant sections [1] of the Soldiers' and Sailors' Civil Relief Act of October 17, 1940, 54 Stat. at L. 1178, as amended by the Act of October 6, 1942, 56 Stat. at L. 769, 50 U. S. C. §§510 et seq. In answer to plaintiff's petition, defendant relies on certain other sections of the Soldiers' and Sailors' Civil Relief Act of 1940, particularly section 700—added to the Act by the amendment of October 6, 1942, 56 Stat. at L. 769, in support of his request for a stay of the foreclosure proceedings. Section 700 provides:

"(1) A person may, at any time during his period of military service or within six months thereafter, apply

---

[1] Section 302(3) provides: "No sale, foreclosure, or seizure of property for nonpayment of any sum due under any such obligation, or for any other breach of the terms thereof, whether under a power of sale, under a judgment entered upon warrant of attorney to confess judgment contained therein, or otherwise, shall be valid if made after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 and during the period of military service or within three months thereafter, except pursuant to an agreement as provided in section 107, unless upon an order previously granted by the court and a return thereto made and approved by the court."

And section 302(4) further provides: "Any person who shall knowingly cause to be made any sale, foreclosure, or seizure of property, defined as invalid by subsection (3) hereof, or attempts so to do, shall be guilty of a misdemeanor and shall be punished by imprisonment not to exceed one year or by fine not to exceed $1,000, or both."

In construing language similar to that used in section 302(3), in the corresponding section of the Soldiers' and Sailors' Civil Relief Act of March 8, 1918, 40 Stat. at L. 440, it was held that a mortgagee foreclosed on such obligations of persons in the military service at his own peril, unless upon an order of sale previously granted by the court and return thereof made and approved by it: Hoffman v. Charlestown Five Cents Savings Bank, 231 Mass. 324, 121 N. E. 15 (1918); Morse et al. v. Stober et al., 233 Mass. 223, 123 N. E. 780 (1919); John Hancock Mutual Life Ins. Co. et al. v. Lester et al., 234 Mass. 559, 125 N. E. 594 (1920).

to a court for relief in respect of any obligation or liability incurred by such person prior to his period of military service or in respect of any tax or assessment whether falling due prior to or during his period of military service. The court, after appropriate notice and hearing, unless in its opinion the ability of the applicant to comply with the terms of such obligation or liability or to pay such tax or assessment has not been materially affected by reason of his military service, may grant the following relief:

"(a) In the case of an obligation payable under its terms in installments under a contract for the purchase of real estate, or secured by a mortgage or other instrument in the nature of a mortgage upon real estate, a stay of the enforcement of such obligation during the applicant's period of military service and, from the date of termination of such period of military service or from the date of application if made after such service, for a period equal to the period of the remaining life of the installment contract or other instrument plus a period of time equal to the period of military service of the applicant, or any part of such combined period, subject to payment of the balance of principal and accumulated interest due and unpaid at the date of termination of the period of military service or from the date of application, as the case may be, in equal installments during such combined period at such rate of interest on the unpaid balance as is prescribed in such contract, or other instrument evidencing the obligation, for installments paid when due, and subject to such other terms as may be just."

And section 302, upon which defendant also relies, because it applies, inter alia, to obligations secured by mortgage, states:

"(1) The provisions of this section shall apply only to obligations secured by mortgage, trust deed, or other security in the nature of a mortgage upon real or personal property owned by a person in military service

at the commencement of the period of the military service and still so owned by him which obligations originated prior to such person's period of military service.

"(2) In any proceeding commenced in any court during the period of military service to enforce such obligation arising out of nonpayment of any sum thereunder due or out of any other breach of the terms thereof occurring prior to or during the period of such service the court may, after hearing, in its discretion, on its own motion, and shall, on application to it by such person in military service or some person on his behalf, unless in the opinion of the court the ability of the defendant to comply with the terms of the obligation is not materially affected by reason of his military service—(a) stay the proceedings as provided in this Act; or (b) make such other disposition of the case as may be equitable to conserve the interests of all parties."

Whether or not defendant is entitled to a stay of these foreclosure proceedings depends upon the answer to this question: Is "the ability of the defendant to comply with the terms of the obligation . . . materially affected by reason of his military service"? Because this question is, by the Soldiers' and Sailors' Civil Relief Act of 1940, secs. 302(2) and 700, supra, directed to the discretion of the court, we shall first consider carefully the facts leading up to the issuance of the writ of pluries fieri facias under which plaintiff now seeks to sell the property.

The mortgage, for $15,200, was given by defendant on a building purchased from plaintiff in July 1938. Under its terms defendant was obligated to pay $200 by December 30, 1938, and thereafter the debt was to be amortized in quarterly instalments of $187.50, with interest at five percent, payments to begin 15 months from the date thereof. By January 1941 defendant had become delinquent in certain payments. Thereafter,

and of importance to our present determination, this is what happened according to the record and the averments of the petition and answer before us. On January 30, 1941, and February 6, 1941, the parties entered into an extension agreement in order to cure the delinquencies, whereby (1) defendant was to pay 24 instalments of $37.02 on the 27th day of each month from May to December, inclusive, in the years 1941 to 1943; (2) all rents were to be collected by plaintiff, and defendant, on or before May 15th of the years 1942 and 1943, was to make up any deficiency between the amounts of rent collected by plaintiff's agent from the premises during the previous calendar year and the amount necessary to pay taxes, water rent, insurance, and interest at five percent on the mortgage for the same calendar year; and (3) defendant was to assume payment for heat, light, and repairs on the mortgaged premises.

Foreclosure proceedings were instituted on July 3, 1941, for the reason, defendant avers, that plaintiff's counsel had been advised that defendant's selective service classification had been changed from 3-A to 1-A, and that therefore his entry into the military service was imminent. Judgment was entered on July 5, 1941. Defendant further alleges that when he advised plaintiff's attorney, a few days later, that he was still in 3-A he agreed to stay the foreclosure proceedings.

A year later, on June 27, 1942, defendant received notice of his reclassification into 1-A. He was to report for induction on July 11, 1942, but an appeal from the selective service classification delayed his induction until October 14, 1942. Subsequent to the notice of the 1-A classification, plaintiff's counsel had been informed of defendant's change in draft status, and so on July 16, 1942, when defendant made a payment to plaintiff's counsel, the latter said:

"I want you [defendant] to transfer this property to someone else because you are subject to draft and may

have to leave any day, and under the Sailors' and Soldiers' Relief Act we will be unable to get any income out of these properties."

Defendant did not agree to a transfer and so an alias writ of fieri facias was issued on July 21, 1942, for the sheriff's sale on September 21, 1942. In a letter to defendant, dated July 27, 1942, plaintiff's counsel gave as the reason for this action the fact that they had been *misinformed* to the effect that defendant had entered into a new lease for one of the apartments, had collected a month's rent, and had not turned the money over to plaintiff's agent. In fact the money had been turned over. The letter added that if the amount of $100.20, allegedly due under the agreement, plus the regular instalment of $37.02 were paid on or before August 27, 1942, the property would be withdrawn from the sheriff's sale list. That sum of $100.20 was subsequently revised by plaintiff to $15.27. Defendant disputed even the $15.27, and so on August 27, 1942, he sent only the regular monthly sum of $37.02. The check was returned by plaintiff because of defendant's failure to remit the additional $15.27, and at the same time plaintiff informed defendant that he was proceeding with the foreclosure. Then on August 31, 1942, defendant remitted to plaintiff the aforementioned payment of $37.02, plus a check for $15.27, representing the alleged deficit, but plaintiff refused to accept the checks. Accordingly, defendant petitioned the court to stay the foreclosure proceedings on the ground that he was not in default under the aforementioned agreement. A rule to show cause was granted, and all proceedings were stayed meanwhile. Judge Sloane discharged the rule on October 8, 1942, on the ground that there was no consideration for the extension agreement since defendant was, under it, doing only what he was already bound to do. This disposition of the case on October 8th meant that the property now could not be put up for sale until the sheriff's sale on November 2,

1942. On that same day, October 8, 1942, a pluries fieri facias writ was issued. On October 14, 1942, defendant was inducted into the Army and now the petition and rule to show cause why the sale should not proceed regardless of defendant's military service is before us.

A mere statement of these facts as gathered from the record convinces us that this is a case of a soldier's obligation coming within the protection of sections 302 and 700 of the Soldiers' and Sailors' Civil Relief Act of 1940.

The gist of plaintiff's argument is that defendant's default on his obligation was made long before his induction into the military service and therefore his ability to pay or to defend the mortgage foreclosure proceedings has not been materially affected by his military service. To that contention we point out that it is immaterial that the default occurred before the induction. Whether or not the obligation becomes due *before* or *after* a person's induction, the question for us to decide in both instances is whether "the ability of the defendant to comply with the terms of the obligation is . . . materially affected by reason of his military service." Both sections 302 and 700 are specifically designed to cover obligations falling due *prior to* or *during* the period of military service. Plaintiff, in support of his contention, cites Commonwealth v. Rizzuto, 45 D. & C. 334 (1942),[2] but the question there dealt with was the liability of a father in military service for the support of his child, and there is no support at all in that case for the sweeping proposition that "ability to pay after induction is immaterial" where the person has been in default on a mortgage before entering the service.

---

[2] The court there said (p. 336) : "It would be a strange doctrine now to say that since the child's father is in the military service the child no longer needs support. Especially is this true since the defaults in the payment of the order occurred before Watts entered the service."

While Judge Sloane has ruled that there was no consideration for the extension agreement, the fact nevertheless remains that plaintiff repeatedly held off foreclosing on the mortgage until defendant had been ordered for induction. And defendant avers that even then plaintiff had indicated a willingness to adjust matters without foreclosure, but that plaintiff's counsel has ordered the property for sale.

Nor can we ignore defendant's averments to the effect that his ability to pay the entire mortgage debt—principal, interest, and costs—has been materially affected by his military service. Apparently defendant had an income of approximately $75 a week prior to his induction, and therefore his allegation that he could have refinanced the mortgage by borrowing enough on a new mortgage to pay off plaintiff may be considered reasonable. That a refinancing proposition might have been entirely feasible, had he not been inducted into the service, is also indicated by the fact that the property is presently earning rents sufficient to cover the carrying charges, including "a substantial part, if not all" of the interest at five percent, according to defendant. True, the record does not show any effort on the part of defendant to refinance the property, but it is to be noted that up until August 27, 1942, when defendant had already been ordered for induction, plaintiff had indicated to defendant a willingness not to go through with the foreclosure proceedings.

The statutes enacted for the benefit of persons engaged in military service are a recognized institution in this country and, being remedial, are to be construed liberally: Hunt v. Jacobson et al., 178 Misc. 201 (1942) ; 33 N. Y. S. (2d) 661, 663; Clark v. Mechanics' American National Bank et al., 282 Fed. 589 (C. C. A. 8th, 1922) ; Steinfield v. Massachusetts Bonding & Ins. Co., 80 N. H. 39, 112 Atl. 800 (1921). Therefore, in construing the Soldiers' and Sailors' Civil

Relief Act of 1940 so as to accomplish the purpose [3] for which it was enacted, we are certainly not entitled to resolve any doubts against the defendant. See note on the history of the Soldiers' and Sailors' Civil Relief Act of 1918 in 3 Mass. L. Q. 204.

In determining whether or not we should grant a stay of proceedings here, our criterion is the combination of two factors, i. e.: (1) That defendant's inability to comply results by reason of military service; and (2) that such military service has materially affected the ability to comply. A review of the facts in this case satisfies us that defendant measures up to this criterion and should be granted a stay.[4]

Plaintiff also relies on the recent case of Jenkintown Bank & Trust Co., Trustee, v. Greenspan, 44 D. & C. 507 (1942), in which defendant was denied a petition to stay the sheriff's sale in foreclosure proceedings. Judgment had been entered on November 25, 1941, defendant having entered no defense to the action. On

---

[3] Section 100 states the purpose in this language: "In order to provide for, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the United States and to enable the United States the more successfully to fulfill the requirements of the national defense, provision is hereby made to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation, and to this end the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the period herein specified over which this Act remains in force."

[4] Section 204 of the Soldiers' and Sailors' Civil Relief Act of 1940 provides for the term of the stay: "Any stay of any action, proceeding, attachment, or execution, ordered by any court under the provisions of this Act may, except as otherwise provided, be ordered for the period of military service and three months thereafter or any part of such period, and subject to such terms as may be just, whether as to payment in installments of such amounts and at such times as the court may fix or otherwise. Where the person in military service is a codefendant with others the plaintiff may nevertheless by leave of court proceed against the others."

December 10, 1941, defendant enlisted in the armed forces. Defendant had purchased the lots intending to develop them by building homes on them. In addition to the mortgage judgment against him, there were 13 other judgments entered against defendant. In denying a stay under section 201 [5] of the Soldiers' and Sailors' Civil Relief Act of 1940, President Judge Knight said (p. 510) :

"Certainly the ability of Perry Greenspan, Jr., to conduct his defense to the sci. fa. was not affected by his military service, for judgment was obtained against him before he entered the service."

It is to be noted that the Greenspan case can be distinguished from the case before us in at least three respects: (1) The court there was considering only section 201 of the Soldiers' and Sailors' Civil Relief Act of 1940, while that question is not even before us since defendant here was represented by counsel at all times and the ability of defendant "to conduct his defense is not materially affected by reason of his military service". (2) The court there did not consider the question whether or not defendant's ability to comply with his obligation was materially affected by reason of his military service. There were not present any factors such as an indicated willingness to extend the obligation on the part of the mortgagee up until learning of the imminence of the mortgagor's induction; nor, because of judgments totalling $11,317 in addition to the $4,300 mortgage debt, was there a possible likelihood of

---

[5] This section provides: "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

a refinancing. (3) And the court there found that "The real estate is non-productive, and it will not take long to eat up whatever interest Perry Greenspan, Jr., has in the property. As a matter of fact, he has no equity in the real estate whatever, for the judgment creditors would have to be paid before he received anything": page 510. The property here, in contrast, is earning, according to the averments of defendant's answer, enough to cover the running expenses plus practically all of the interest at five percent.

There are only a few reported cases under the Soldiers' and Sailors' Civil Relief Act of 1940 [6] involving a stay of mortgage foreclosure proceedings (see annotation, 137 A. L. R. 451), and only one (in addition to the Greenspan case, supra), Cortland Savings Bank v. Ivory et al., 27 N. Y. S. (2d) 313 (1941), deals with a problem similar to the one now before us. In that case a foreclosure proceeding was stayed upon condition that diminished payments be made upon the mortgage, it appearing (1) that defendants, husband and wife, had executed their bond and mortgage, and prior to the husband's call to active service in the United States Navy had been prompt in making monthly payments, and also (2) that the husband's income had, after entrance into active service, been reduced. After pointing out that the mortgagor had made all his monthly payments with the exception of the last three, the court said (p. 314):

"His mode of living, record of promptness in making payments to the mortgagee over a period of 5 years, commend him to the court."

While we concede that defendant here has been in default on his mortgage, it must also be noted that not

---

[6] The annotation in 130 A. L. R. 774, adequately covers the mortgage foreclosure cases arising under the Soldiers' and Sailors' Civil Relief Act of 1918, but the cases cited therein are not directly on point here, i. e., they do not deal with the question of the effect of military service on the mortgagor's ability to pay.

until defendant had been ordered to report for induction did plaintiff actively pursue the foreclosure proceedings. *Up until that time defendant had not been placed in a position where refinancing of the mortgage was the only way to keep the property.* Naturally, after June 27, 1942, the date of his order to report for induction, his credit was impaired and no one would have considered giving him a new mortgage in view of his reduced earnings in the military service. And his ability to comply with the obligation of the mortgage must be looked at from the time when defendant first knew definitely that the property was in peril of being sold on foreclosure sale, and that was after he had been ordered for induction. The Soldiers' and Sailors' Civil Relief Act of 1940, by amendment of October 6, 1942, specifically extends the relief granted by the relevant sections of the act to the date of receipt of the order to report for induction.[7] Plaintiff, it is true, had a right to have the property sold at sheriff's sale a long time before defendant's order of induction, but he was consistent in his indications to defendant that he would not foreclose as long as the agreed payments were made. Not until defendant was finally awaiting induction did plaintiff decide definitely to go through with the sheriff's sale. Under these circumstances it is certainly reasonable for us to conclude that the ability of defendant to comply with the terms of the mortgage obligation is, and has been, materially affected by his military service.

We find no merit in plaintiff's argument that but for the stay granted defendant on September 9, 1942,

---

[7] Section 106 states: "Any person who has been ordered to report for induction under the Selective Training and Service Act of 1940, as amended, shall be entitled to the relief and benefits accorded persons in military service under articles I, II, and III of this Act during the period beginning on the date of receipt of such order and ending on the date upon which such person reports for induction . . ."

the property would have been sold on September 21, 1942—before defendant was inducted. The stay was granted at that time pending the determination of a bona fide question of law involved, that is, whether or not there was consideration for plaintiff's earlier agreement not to foreclose. To hold that because of such a stay in any proceedings a defendant cannot later avail himself of the protection provided by the Soldiers' and Sailors' Civil Relief Act would be an unjustifiably technical construction rendering that act nugatory in many cases. The courts will not penalize service men by denying the application of the Soldiers' and Sailors' Civil Relief Act in all those cases where a defendant could *normally* ask for a stay simply because the stay postpones the proceedings to a later date when the person has been inducted into the service.

In a final word, we wish to add that we are not blind to the equities of the plaintiff in this case. Nor has our decision been reached without difficulty. It is important on the one hand that the Soldiers' and Sailors' Civil Relief Act should not be treated as a blanket moratorium on all litigation against service men. To thus enforce the act might prove a boomerang (see Smith, "The Soldiers' and Sailors' Civil Relief Act" in Practice, 3 Mass. L. Q. 228, 229 (1918)) in that all credit for men in service and for their dependents would be destroyed. And on the other hand, these are times when some sacrifices must be made, and it is the duty of our economic society to persons called into the service that they be made to feel that their homes and businesses upon which they are dependent are afforded some protection during the war. In the light of these conflicting factors we shall examine in detail the facts of each individual case coming before us. The equities must be carefully weighed, and the act administered as an instrument to accomplish substantial justice.

We are constrained, therefore, on the state of the record before us, to enter the following

## Order

And now, October 30, 1942, it is ordered that further action in these foreclosure proceedings be stayed, and it is further ordered that no execution may issue until after the lapse of three months from defendant's discharge from service, however, upon the continued compliance with the following conditions:

(*a*) Plaintiff is to collect all rents, profits and income from the mortgaged premises as mortgagee in possession, and for that purpose to have free access to the mortgaged premises for the purpose of operation and collection. As mortgagee in possession plaintiff may employ agents or employes and in any accounting may deduct their reasonable and customary compensation;

(*b*) Defendant shall forthwith pay plaintiff the sum of $35, representing September rent by the tenant Kivitz, paid to defendant;

(*c*) Defendant shall within 30 days from date deliver to plaintiff the possession of the delicatessen store previously occupied by him, which forms part of the mortgaged premises, without any property of defendant remaining therein, and the keys thereto; plaintiff meanwhile to have the right to exhibit a "For Rent" sign thereon and to be allowed access for that purpose and for the purpose of showing the same to any prospective tenant. Within said period of 30 days any nominee of defendant shall have the privilege of entering into a Yeo & Lukens "Y" form of lease for said store for a term of one month, renewable from month to month thereafter in the absence of 30 days' notice of termination by either party, for a rental of $150 per month, payable in advance;

(*d*) On or before November 9, 1942, any relative of defendant now residing in the apartment forming part of the mortgaged premises previously occupied by defendant shall either vacate the same and deliver the

keys to plaintiff or shall execute a Yeo & Lukens "Y" form of lease therefor for a period of one month, renewable from month to month thereafter, in the absence of 30 days' notice of termination by either party for a rental of $65 per month, payable in advance (and pay the first month's rent), or in such sum as may be specified and approved by lawful authority.

